# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7025 | **DATE** | 8/22/2003 |
| **CASE TITLE** | | Everst, et al vs. Credit Protection Association, L.P. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Motion for Summary Judgment (R. 52-1) is granted. Plaintiffs' Motion to Strike (R. 60-2) is denied. The Court enters judgment in favor of Defendants AT&T Broadband LLC and Communications and Cable of Chicago, Inc. on Counts II and III. Status hearing set for 8/27/03 is stricken. Any other pending dates are stricken. Any other pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | number of notices | | **Document Number** |
| | No notices required. | | | | | | |
| ✓ | Notices mailed by judge's staff. | | | | AUG 2 5 2003 date docketed | | |
| | Notified counsel by telephone. | | | | | | 64 |
| | Docketing to mail notices. | | | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | 8/22/03 date mailed notice | | |
| | Copy to judge/magistrate judge. | | | | | | |
| | TH | courtroom deputy's initials | | | mailing deputy initials | | |

03 AUG 22 PM 4:34

FILED FOR DOCKETING

CLERK U.S. DISTRICT COURT

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANDREW EVERST, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 01 C 7025 |
| v. | ) | |
| | ) | |
| CREDIT PROTECTION ASSOCIATION, L.P., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Andrew Everst, Frances Gutierrez, and Joseph Rydel filed a class action lawsuit against

Credit Protection Association, L.P. ("CPA"), AT&T Broadband, LLC, ("AT&T LLC") and

Communications and Cable of Chicago, Inc. ("CCC") alleging violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). CPA reached a settlement agreement

with Plaintiffs. The remaining defendants, AT&T LLC and CCC, now move for summary

judgment. For the reasons stated herein, the Court grants the motion.

## BACKGROUND

**DOCKETED**

**AUG 2 5 2003**

I.    **Uncontested Facts**[1]

   A.    **Corporate Relationship**

South Chicago Cable, Inc. owned both CCC and LaSalle Telecommunications, Inc.

---

[1] The Court denies Plaintiffs' motion to strike Defendants' use of three affidavits. Plaintiffs complain that Defendants improperly rely on declarations of witnesses that Defendants did not disclose as required by Federal Rule of Civil Procedure 26(a). Plaintiffs' argument fails for two reasons. First, Defendants' use of Jennifer Heller's affidavit does not prejudice Plaintiffs, since they admit all material facts that are supported by Heller's affidavit. Second, Defendants were under no duty to supplement their Rule 26(a) disclosures with respect to Frank Politano and Martha Ryczek. Rule 26(e) only mandates supplementation where "information has not otherwise been made known to the other parties during the discovery process." Plaintiffs admit that they knew that Politano and Ryczek possessed relevant information. Plaintiffs' counsel even asked certain deponents questions about these two affiants. In any event, if Politano or Ryczek had provided information in their affidavits that made it impossible to respond without further discovery, Plaintiffs should have filed a Rule 56(f) motion.

("LaSalle") from September 2000 to September 2001. (R. 52-3, Defs.' Statement of Material Facts ¶ 6.) AT&T Corp. was the parent company to both South Chicago Cable, Inc. and AT&T LLC throughout this time-period. (*Id.* at ¶¶ 7-8.) Thus, CCC, LaSalle, and AT&T LLC were affiliated corporations that shared the same parent, AT&T Corp. (*Id.* at ¶¶ 9, 20.)

### B. CCC and LaSalle's Principal Business

CCC and La Salle are franchisees that provide cable services. Companies obtain franchises from municipalities in order to provide residential cable services to individuals in those municipalities. (R. 52-3, Defs.' Statement of Material Facts ¶ 10.) From September 2000 through September 2001, CCC held a franchise to provide cable services to Rydel and his municipality, and LaSalle held a franchise to provide cable services to Gutierrez's municipality. (*Id.* at ¶¶ 11, 13-14, 29.) AT&T LLC did not hold a franchise to provide cable services in the Chicago metropolitan area during this time. (*Id.* at ¶ 12.) Neither CCC nor LaSalle principally engage in debt collection. (*Id.* at ¶ 15.)

### C. CCC and LaSalle's Use of the AT&T Brand Name

When CCC and LaSalle began providing cable services pursuant to their franchises, they branded their services by using the "AT&T" mark in connection with "Broadband." (R. 52-3, Defs.' Statement of Material Facts ¶ 17.) AT&T Corporation, which is the parent company of CCC and LaSalle, is the owner and registrant of various trademarks with the AT&T name and the famous AT&T globe logo. (*Id.* at ¶ 18.)

### D. CPA's Debt Collection Services

CPA provided debt management and recovery services to TCI of Illinois, Inc. and its affiliate, AT&T Cable Services, from December 1, 1999 to December 1, 2000. (R. 52-3, Defs.' Statement of Material Facts ¶ 23.) CCC and LaSalle automatically forwarded unpaid accounts to CPA for collection upon hard disconnection. (*Id.* at ¶¶ 24-25, 35.) CCC and LaSalle authorized CPA to telephone delinquent cable subscribers, send collection letters formulated by CPA to them and accept check and credit card payments. (*Id.* at ¶¶ 26-28, 31.) AT&T LLC reviewed the

2

collection letters CPA sent to CCC's delinquent cable subscribers. (R. 60-1, Pls.' Add'l Material Facts ¶ 15.)

### E. Rydel's Cable Account

On April 14, 2000, Plaintiff Rydel executed a work order for cable services at his residence in Chicago, Illinois. (R. 52-3, Defs.' Statement of Material Facts ¶ 31.) "AT&T Cable Services" and the AT&T globe logo headed the work order. (*Id.* at ¶ 32.) The work order did not reference CCC and AT&T LLC, although CCC was Rydel's cable provider. (*Id.* at ¶¶ 33-34.)

CCC sent Rydel account statements from April to July 2000 that contained the name "AT&T" in conjunction with "Cable Services" and the AT&T globe logo. (*Id.* at ¶¶ 36, 38.) Each statement also contained a payment coupon that requested checks to "AT&T Cable Services" at P.O. Box 173885, Denver, CO, 80217-3885. (*Id.* at ¶ 39.) None of the statements or payment coupons reference CCC or AT&T LLC. (*Id.* at ¶¶ 37, 40.) CCC disconnected Rydel's services on July 14, 2000 because of an outstanding balance. (*Id.* at ¶¶ 41-42.)

Upon disconnection, CCC's billing system automatically forwarded Rydel's delinquent account to CPA for collection. (*Id.* at ¶ 43.) CPA sent two collection letters to Rydel on August 21 and September 11, 2000. (*Id.* at ¶ 44.) Neither AT&T LLC nor CCC participated in the design or drafting of these letters. (*Id.* at ¶ 45.)

CPA's first letter to Rydel stated that his account with "AT&T Cable Services" was past due and requested payment be sent to "AT&T Cable Services, 1255 W. North Ave., Chicago, IL 60622-1543." (*Id.* at ¶ 46.) CPA's second letter stated that his account with "AT&T Broadband" was overdue and requested payment be sent to "AT&T Broadband" at the same address. (*Id.* at ¶ 48.)

### F. Gutierrez's Cable Account

On September 11, 2000, Gutierrez executed a work order headed "AT&T Cable Services" with the AT&T globe logo for cable services at her residence in Chicago, Illinois. (*Id.*

3

at ¶¶ 49-50.) The installer's truck also contained the AT&T mark and globe logo. (*Id.* at 51.) Gutierrez's work order did not reference CCC, LaSalle, or AT&T LLC, although LaSalle provided Gutierrez's cable services to her while using the AT&T brand name. (*Id.* at ¶¶ 52-53.)

LaSalle sent Gutierrez account statements from November 2000 to January 2001. These statements contained the "AT&T Broadband" brand name and the AT&T globe logo, but did not reference AT&T LLC, CCC, or LaSalle. (*Id.* at ¶¶ 55-56.) Each statement and payment coupon contained Gutierrez's account number and requested that customers send checks to "AT&T Broadband" at P.O. Box 173885, Denver, CO 80217-3885. (*Id.* at ¶¶ 57, 59.) The payment coupons did not reference CCC, LaSalle, or AT&T LLC. (*Id.* at ¶ 60.) In addition, representatives identifying themselves as "AT&T Broadband" answered Gutierrez's calls to the customer service number listed on her statements. (*Id.* at ¶ 58.)

CCC disconnected Gutierrez's cable on February 8, 2001. (*Id.* at ¶ 62.) CCC's billing system then automatically forwarded Gutierrez's account information to CPA for collection. (*Id.* at ¶ 63.) CPA sent Gutierrez five collection letters from March to June 2001. (*Id.* at ¶ 64.) CPA's letters stated that Gutierrez's account with "AT&T Cable Services" was past due and requested payment to "AT&T Cable Services, P.O. Box 173885, Denver, CO 80217-3885." (*Id.* at ¶ 66.) CPA formulated its letters with the advice of legal counsel. (*Id.* at ¶ 65.) Neither CCC nor AT&T LLC participated in formulating these letters. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party bearing the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient to demonstrate the existence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

In evaluating a summary judgment motion, the Courts construes the evidence in the light most favorable to the non-movant and draws all reasonable inferences in its favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court will accept the non-movant's version of any disputed facts if the non-movant supports those facts with relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## ANALYSIS

After reaching a settlement agreement with CPA with respect to Count I, Plaintiffs have two remaining counts in this lawsuit. In Count II, Plaintiffs allege that AT&T LLC violated Section 1692j of the FDCPA. In Count III, Plaintiffs claim that CCC violated Section 1692e of the FDCPA. Defendants move for summary judgment on each count.

**I.     The Undisputed Facts Show That AT&T LLC Did Not Violate Section 1692j Of The FDCPA**

AT&T LLC argues that it is entitled to summary judgment on Count II because the undisputed facts show that its conduct was not actionable under Section 1692j. Section 1692j of the FDCPA makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor . . . is

5

participating in the collection of . . . a debt . . . ." 15 U.S.C. 1692j. That is, the Section requires a plaintiff to show that the defendant "conceived, prepared, and issued" the misleading form. *Laubach v. Arrow Serv. Bureau, Inc.*, 987 F.Supp. 625, 630 (N.D. Ill. 1997).

AT&T LLC maintains that it is not liable under this section since it did not design, compile and furnish the letters CPA sent to Plaintiffs.[2] While Plaintiffs concede this point, they counter that AT&T LLC's conduct is actionable because AT&T LLC "knowingly permitted" CPA to send letters that showed that Plaintiffs owed a debt to "AT&T Broadband."

Plaintiffs' argument fails. Even providing Plaintiffs with all reasonable inferences, AT&T LLC's participation in the debt collection process did not violate the plain language of the statute. Section 1692j allows creditors to participate in the creation of the forms, so long as that participation does not rise to the level of designing, compiling and furnishing. *See, e.g., Taylor v. Rollins,* No. 97 C 4156, 1998 WL 164890 at *7 (N.D. Ill. Mar. 30, 1998) ("authoriz[ing], caus[ing], and permit[ting]" a third party to use one's name in debt collection was insufficient for Section 1692j liability); *Laubach.,* 987 F.Supp. at 630 ("label merging, letter printing, and mass mailing activities" do not constitute designing, compiling, and furnishing). AT&T LLC did review CPA's letters, but did not design, compile or furnish the forms. Accordingly, AT&T LLC is entitled to judgment on Count II.

## II. The Undisputed Facts Show That CCC Did Not Violate Section 1692e Of The FDCPA

Rydel, representing a class of plaintiffs, alleges in the Complaint that CCC violated Section 1692e(14) by using a name other than its own in the collection of debt. Section 1692e, however, only regulates the conduct of "debt collectors." Accordingly, CCC is entitled to summary judgment if the undisputed facts show that they are not "debt collectors" as defined by

---

[2] AT&T LLC also argues that the forms do not violate Section 1692j because CCC was entitled to use the names AT&T Broadband and AT&T Cable Services in the letters. The Court addresses CCC's use of those names in deciding whether CCC is entitled to summary judgment on Count III. *See infra* Section II.

Section 1692a.

Ordinarily, creditors are not subject to liability under the FDCPA. The FDCPA, however, deems a creditor to be a debt collector if it "[1] in the process of collecting [its] own debts, [2] uses any name other than [its] own [3] "which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The undisputed facts show that CCC does not meet any of these elements.

## A.     CCC did not Collect its Own Debts

CCC did not collect its own debts. Instead, it hired CPA to be its debts collector. Therefore, CCC is not deemed to be subject to liability as a debt collector under Section 1692a(6). *Epps v. Etan Indus., Inc.*, No. 97 C 8770, 1998 WL 851488, at *4 (N.D. Ill. Dec. 1, 1998) (despite maintaining some control in the debt collection process, creditor was not liable under Section 1692a(6) where it hired a debt collector).

## B.     CCC did not Use a Name other than its Own

At issue here is whether "AT&T Cable Services" and "AT&T Broadband" is a name other than CCC's own. A creditor does not have to solely use its name of incorporation under the FDCPA. Instead, a creditor "should use the name under which is usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (internal quotation and citation omitted); *see also Friedman v. Rubinstein*, No. 97 C 6610, 1997 WL 757875 at *3 (N.D. Ill. Dec. 1, 1997); *Dickenson v. Townside T.V. & Appliance, Inc.*, 770 F.Supp. 1122, 1128-29 (S.D.W.Va. 1990). Defendants may use assumed names for debt collection, so long as defendants are consistent in using the assumed name to avoid consumer confusion. *E.g. Friedman*, 1997 WL 757875 at *3. CCC did not violate Section 1692a(6) because it consistently used the service name AT&T Cable Services for its cable franchise business. CPA continued to use the AT&T Cable Services and AT&T Broadband names when

attempting to collect CCC's debts.

Plaintiffs claim that CCC violated this section because it used the assumed names of AT&T Cable Services and AT&T Broadband in violation of the Illinois Business Corporation Act. Plaintiffs' argument, however, is without merit. While the Illinois Business Corporation Act does regulate against using assumed names under certain circumstances, it explicitly allows a corporation to identify itself "with a trademark or service mark of which it is the owner or licensed user . . . ." 805 ILCS 5/4.15.

Plaintiffs claim that CCC's use of the AT&T name in these combinations does not fall under this exception. Plaintiffs first note that Defendants did not have a trademark registration for AT&T Broadband or AT&T Cable Services when they attempted to collect their debts. A party acquires ownership of a brand name through use – not through registration. *Holiday Inn v. Holiday Inns, Inc.,* 534 F.2d 312, 319 (C.C.P.A., 1976). CCC used the AT&T Broadband and AT&T Cable Services names with Plaintiffs from the inception of its franchise. Therefore, whether CCC had registered the names "AT&T Cable Services" or "AT&T Broadband" is irrelevant.

Second, Plaintiffs argue that it only AT&T Corporation has a right to use the AT&T trademarks. This argument fails because the undisputed facts show that AT&T Corporation orally licensed these trademarks to CCC. Even without the evidence of that licensing agreement, it is clear that AT&T Corporation has implicitly allowed CCC to use its trademarks. AT&T Corporation, despite knowledge of this lawsuit and CCC's use of its trademarks, has chosen not to institute infringement proceedings against its subsidiary. Plaintiffs do not have standing to challenge whether AT&T Corporation should allow CCC to use its trademarks. Accordingly, CCC did not use a name other than its own when calling itself AT&T Cable Services and AT&T Broadband.

8

**C.     CCC did not Indicate that a Third Person was Collecting or Attempting to Collect Plaintiffs' Debts**

Because CCC consistently used the AT&T marks, no consumer could have believed that a third person (other than CPA) was attempting to collect its debt.  Instead, Plaintiffs could have only associated the names AT&T Cable Services and AT&T Broadband with the franchise that provided their cable service.  While this company was incorporated as CCC, it used the service marks of AT&T Cable Services and AT&T Broadband.  Accordingly, CCC is entitled to summary judgment on Count III.

## CONCLUSION

Plaintiffs fail to raise a genuine issue of material fact on either Count II or Count III. AT&T LLC and CCC are entitled to judgment as a matter of law because the undisputed facts show that they did not violation Section 1692j or Section 1692e of the FDCPA.


Dated: August 22, 2003                    ENTERED:


                                          AMY J. ST. EVE
                                          U.S. District Court Judge